# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 29, 2016

## STATE OF TENNESSEE v. JOHN EDWARD DAWSON

**Appeal from the Criminal Court for McMinn County**
**No. 2014-CR-179   Sandra Donaghy, Judge**
_____

**No. E2016-00123-CCA-R3-CD – Filed July 27, 2016**
_____


Following a jury trial, the Defendant, John Edward Dawson, was convicted of aggravated burglary, burglary, vandalism of property valued at $1,000 or more but less than $10,000, theft of property valued at $1,000 or more but less than $10,000, and possession of burglary tools.  The trial court sentenced the Defendant, as a Range II multiple offender, to ten years for aggravated burglary; eight years for burglary; eight years for vandalism of property valued at $1,000 or more but less than $10,000; and eight years for theft of property valued at $1,000 or more but less than $10,000.  The trial court also sentenced the Defendant to eleven months and twenty-nine days for possession of burglary tools.  All the sentences were ordered to run concurrently for an effective ten years' incarceration.  On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions and contends that his sentence is excessive.  Discerning no error, the judgments of the trial court are affirmed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Richard Hughes, District Public Defender and Donald L. Shahan, Jr., Assistant District Public Defender, for the appellant, John Edward Dawson.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Tammy Crayne-Harris and Paul D. Rush, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

*Trial*

At trial, Tim Denton testified that on March 21, 2014, he and an employee went to his residence to retrieve a trailer. While still in his driveway, Mr. Denton noticed two people inside an unfamiliar, red Chevrolet car driving slowly as if they were looking for someone. Mr. Denton exited his driveway and noticed that the overhead copper wire, which spanned from the house to the barn, was missing from the adjacent, vacant rental property owned by the victim, John Bolix, ("the Bolix property"). Additionally, Mr. Denton noticed two buckets of wire sitting next to an outbuilding. When Mr. Denton stopped to call 911, the red car which he had seen just a few moments prior quickly drove around his vehicle. The employee accompanying Mr. Denton wrote down the license plate number of the red car. Suspecting that the occupants of the red car were in the process of stealing the wire, Mr. Denton provided the 911 operator with the license plate number.

While Mr. Denton was on the phone with a 911 operator, his employee indicated that a man, later identified as the Defendant, was standing near a building on the Bolix property. Mr. Denton did not recognize the Defendant, and he believed that the Defendant should not have been on the property. After asking the 911 operator about making a citizen's arrest rather than waiting on the police, Mr. Denton approached the Defendant, who was carrying two buckets as he walked toward the woods. Once the Defendant spotted Mr. Denton, he dropped the buckets and ran. Mr. Denton pursued the Defendant and tackled him, bound him with a belt, and held him until the police arrived. The police searched the Defendant in front of Mr. Denton, and Mr. Denton saw them remove a pair of lineman's pliers from his back pocket. Mr. Denton explained that the pliers were capable of cutting the wire on the property.

While on the Bolix property, Mr. Denton observed several buckets full of copper wire. He stated that there were two buckets near the road, three buckets next to a building on the property, and two buckets dropped by the Defendant when he tried to flee. Mr. Denton explained that the wires connected to the electric meter, hot water heater, refrigerator, outbuildings, and well house had either been cut or removed. Mr. Denton stated, "Everything that they could get access to[,] they cut loose[.]" Additionally, he noted that the walls were damaged around the hot water heater and electric panel. At Mr. Bolix's request, Mr. Denton, who was a residential contractor with fifteen years' experience building houses, evaluated the damage and provided a written estimate of the cost to repair Mr. Bolix's property. After a side bar discussion with the trial judge, Mr. Denton was allowed to testify, without objection, that he estimated the

total cost in materials and labor to repair the Bolix property was $12,600. Mr. Denton's written estimate was entered without objection as an exhibit.

Patrol Officer Ben Fetter of the McMinn County Sheriff's Department testified that he was called to the Bolix property at around 10:00 a.m. Upon arrival, he saw three men at the driveway, two standing up and one sitting down. Officer Fetter later identified the man sitting down as the Defendant. Officer Fetter conducted a "pat down" of the Defendant and retrieved a pair of wire cutters, two flashlights, a "multi-tool," a credit card that appeared to have been used to open a door, a small pry bar, and a razor blade. Officer Fetter noted that, based on his experience, these items were usually only found in connection with theft. After the pat down, Officer Fetter handcuffed the Defendant and placed him under arrest.

Once the Defendant had been secured, Officer Fetter took photographs of the property to document the crime scene, which were submitted as exhibits. The photographs depicted buckets full of wire, various pieces of cut wire, various fixtures with wire missing, and small piles of metal items. Describing some of the photographs, Officer Fetter stated, "The powerbox on the outside of the house had been cut and stripped, and then inside the residence the breaker box had been cut and stripped." He described another photograph as depicting where the "outer pinning on the house [had] been pulled back, and more wire had been pulled."

Patrol Corporal Larry Moses testified that he responded to the Bolix property for a burglary in progress. However, on his way to the location, he encountered a red, Chevrolet car occupied by a male and a female that matched the description provided in the call. Corporal Moses stopped the car and asked the driver, John Trevor Dawson, to get out of the vehicle.[1] As Trevor exited the vehicle, Corporal Moses noticed a pair of blue-handled pliers in Trevor's back pocket. After conducting a pat down of Trevor, Corporal Moses found a flashlight, side cutter pliers, and two pocket knives. Corporal Moses subsequently conducted a search of the vehicle and found cut wire rolled up, a trash can full of copper wire, a pair of bolt cutters, a pair of slip joint pliers, a pair of tin snips, a pair of vice grips, and a pair of side cutters. After the search of the vehicle was completed, Corporal Moses placed Trevor under arrest and had him transported to the justice center. Corporal Moses then went to the Bolix property, where he saw buckets of wire being carried back from the barn. Corporal Moses noted that the wire at the crime scene was similar to the wire he found in the red car and was in a similar container.

---

[1] Corporal Moses testified that John Trevor Dawson is the son of the Defendant. The Defendant and his son share the same first and last name. To avoid confusion, the Defendant's son will be referred to as Trevor. We mean no disrespect.

John Bolix testified that he owned the property where the crimes were committed. The property contained two small houses, a barn, some outbuildings, fifteen head of cattle, and five horses. Mr. Bolix had rented the property to a local couple for the previous twenty-five years, and the tenants had tended to his animals and property in lieu of paying rent. The couple moved out a few months before the offenses. Before the property was vandalized, the house and barn had running water and electricity. Mr. Bolix was unsure if the back door on the house was locked on the day of the crime, but he stated that the gate to the property was shut. He did not know the Defendant, and he had not given the Defendant permission to be on his property or to remove any wiring. Mr. Bolix stated that he intended to rent the property again, but as of the date of trial, Mr. Bolix had not repaired the property.

Following deliberations, the jury found the Defendant guilty of aggravated burglary, burglary, vandalism of property valued at $1,000 or more but less than $10,000, theft of property valued at $1,000 or more but less than $10,000, and possession of burglary tools.

*Sentencing*

At a subsequent sentencing hearing, the State introduced the Defendant's presentence report and certified copies of the Defendant's prior convictions. The Defendant had thirteen prior convictions, including four theft convictions and a burglary conviction. Corporal Moses was called before the court at the sentencing hearing. He testified about the frequency of thefts, burglaries, and copper wire thefts in the area and the effects that these crimes have on victims.

John Bolix testified that the value of damage done to his property was about $12,600. As of the date of the sentencing hearing, Mr. Bolix had not yet been able to repair his property. He stated that his sons were taking care of the property and animals because no one was renting the property and he was physically unable to care for the animals himself.

Missy Lockhart, the Defendant's probation officer, recounted that the Defendant was released on probation for a prior theft conviction on March 7, 2014. He reported to probation once during the month of March and was arrested on the instant charges on March 21, 2014. After the Defendant was convicted of the instant charges, the trial court revoked the Defendant's probation and ordered the Defendant to serve his prior sentence of eight years in the Tennessee Department of Correction.

Sharon Gaston, an investigative report writer for the Department of Correction, testified that the Defendant was forty-six years old, that he had begun committing crimes at around eighteen to twenty years old, and that he had consistently committed crimes

throughout his life. The Defendant reported to her that he began smoking marijuana at the age of eighteen and began using methamphetamine at around age forty. Ms. Gaston noted that the Defendant's recidivism rate placed him in a category of people that pose the maximum risk of committing more crimes. Thus, she did not recommend probation.

On cross-examination, Ms. Gaston read from the Defendant's personal statement contained in the presentence report where he stated that he realized that his actions were wrong and that he was "pushing himself to be a better man." Since he had been incarcerated, the Defendant had earned his General Education Development diploma, completed anger management, completed the Christian's Against Substance Abuse curriculum, and had been baptized. He stated that he was done with his "criminal ways" and that he felt that he could be a "productive member of society" if released.

The trial court took into consideration the presentence investigative report, the court's notes from the trial, the evidence presented at trial, the verdict of the jury on all charges, and the principles of sentencing and the arguments as to the alternatives, referencing Tennessee Code Annotated section 40-35-103. Based upon his prior convictions, the trial court found that the Defendant had a long history of criminal conduct. The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offense and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. Next, the trial court noted that the Defendant's offenses were nonviolent property offenses but that the offenses were the same type of crimes that the Defendant had been convicted of in the past. The trial court also took into account the fact that Mr. Bolix could no longer procure a tenant to care for his animals because the offenses rendered the house uninhabitable and it would cost $12,600 to rewire the entire property and repair the damage caused by the Defendant.

Regarding enhancement factors, the court applied factor number eight stating, "The defendant before trial or sentencing has failed to comply with the conditions of a sentence involving release into the community." The trial court noted that the Defendant had committed multiple crimes while on probation and concluded that ". . . he is unwilling, or unable to follow a sentence that involves release in the community." The trial court applied factor number thirteen stating, ". . . at the time these felony offenses were committed, this Defendant was on probation, and so that shows his lack of amenability to supervision, and supports a need for enhanced sentencing." The court also found that ". . . the amount of damage done to the victim's property was particularly great in that it rendered the home uninhabitable," and the court applied factor number six.

With regard to mitigating factors, the trial court found that ". . . this Defendant's criminal conduct neither caused not threatened serious bodily injury." The trial court applied no other mitigating factors.

Next, the trial court reviewed statistical data provided by the administrative office of the courts on the sentence length for similarly situated defendants. Also, the court considered the Defendant's own statement accepting responsibility for stealing the copper from Mr. Bolix. Regarding the potential for rehabilitation or treatment, the trial court noted that the Defendant did well while in confinement but that he persisted in criminal activity once released.

The trial court sentenced the Defendant, as a Range II multiple offender, to ten years for aggravated burglary; eight years for burglary; eight years for vandalism of property valued at $1,000 or more but less than $10,000; eight years for theft of property valued at $1,000 or more but less than $10,000; and eleven months and twenty-nine days for possession of burglary tools. The court ordered each of those sentences to run concurrently with one another for an effective ten-year sentence. Additionally, the trial court ordered the Defendant's sentences to run consecutively to the Defendant's prior eight-year sentence. This timely appeal followed.

## II.    Analysis

### *Sufficiency of the Evidence*

On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions. Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and the weight of the evidence are resolved by the fact finder. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

In his statement of the issues, the Defendant alleges that there was insufficient evidence to support all of his convictions in this case. However, the Defendant failed to

provide in his brief any citation to the record, citation to authority, or argument to support his claim that the evidence was insufficient to support his convictions for burglary, theft, or possession of burglary tools. Therefore, he has technically waived our consideration of the issue for those convictions. See Tenn. Ct. Crim. App. R. 10(b). Waiver notwithstanding, we have reviewed the record and conclude that the evidence is sufficient for a rational juror to conclude that the Defendant committed these offenses beyond a reasonable doubt. We will now turn to the Defendant's specific arguments regarding his convictions for aggravated burglary and vandalism.

a. Aggravated Burglary

The Defendant argues that the State did not prove that the Bolix property was a "habitat" for the purposes of aggravated burglary. The State responds that the evidence describing the house's utilities, rooms, and appliances along with the evidence showing that the Defendant had to enter the house in order to remove the copper wire from the appliances and walls "is sufficient to allow a rational juror to conclude that the [D]efendant committed aggravated burglary." We agree with the State.

As charged in the indictment, "A person commits burglary who, without the effective consent of the property owner: . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit . . . theft[.]" Tenn. Code Ann. § 39-14-402(a)(1) (2010). Aggravated burglary is the "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." Tenn. Code Ann. § 39-14-403 (2010). A "habitation" is "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons[.]" Tenn. Code Ann. § 39-14-401(1)(A) (2010). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2010).

Mr. Bolix testified that the house on the property had bedrooms, bathrooms, a kitchen, running water, and electricity, prior to the instant offenses. Also, he testified that a couple had rented and lived in the house for twenty-five years, but the couple moved out just a few months before the offenses. A rational juror could find that the house on the Bolix property was a structure designed or adapted for the overnight accommodation of persons. See Tenn. Code Ann. § 39-14-401(1)(A) (2010).

Further, Mr. Bolix testified that he did not know the Defendant and had not given the Defendant permission to be on his property or to remove any of the wiring. Wires in the house had been cut, and the walls were damaged. Mr. Denton observed the Defendant carrying two buckets of wire, and multiple buckets of wire were found at the scene. A rational juror could conclude that the Defendant entered the house on the Bolix

property with the intent to commit a theft.  The evidence was sufficient to support the Defendant's conviction for aggravated burglary.

### b.  Vandalism

The Defendant also challenges the sufficiency of the evidence supporting his conviction of vandalism of property valued at $1,000 or more but less than $10,000.   The State contends that the evidence regarding damage to the walls in the house, wire being "jerked out of" fixtures, and wire being cut at multiple places on the property along with the $12,600 estimated repair cost is sufficient to allow a rational juror to conclude that the Defendant committed vandalism of property valued at $1,000 or more but less than $10,000.  We agree with the State.

"Any person who knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent is guilty of [vandalism]."  Tenn. Code Ann. § 39-14-408(a) (2010). "Damage," as defined by the Tennessee Code, includes "destroying, polluting, or contaminating property" or "tampering with property and causing pecuniary loss or substantial inconvenience to the owner."  Tenn. Code. Ann. § 39-14-408(a)(1)(A)-(B) (2010).  Property means "anything of value[.]"  Tenn. Code Ann. § 39-11-106(a)(28) (2010).  "Value", as pertinent to this case is defined in Tennessee Code Annotated section 39-11-106(a)(36)(A) as,

> (i) The fair market value of the property or service at the time and place of the offense; or
>
> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

Tenn. Code Ann. § 39-11-106(a)(36)(A).  A person acts "knowingly" when that person is "aware of the nature of the conduct or that the circumstances [surrounding the conduct] exist," or when the person "is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

As mentioned above, Mr. Bolix testified that he did not give the Defendant consent to remove any wire from the property.  Mr. Bolix, Mr. Denton, and Officer Fetter testified to large amounts of wire being cut and removed from various places on the Bolix property and the damage to the house that was caused by the taking of the wire.  The photographs taken by Officer Fetter documented portions of the damage, including wires being stripped from various places on the property and the outer pinning of the house being pulled back.  Thus, a rational juror could find that the Defendant knowingly damaged property owned by Mr. Bolix.

Mr. Denton testified that the estimated cost of repair to the Bolix property was $12,600. A rational juror could find that there was over $1,000 in damages to the property. The evidence was sufficient to support the Defendant's conviction for vandalism of property valued at $1,000 or more but less than $10,000.

To the extent that the Defendant argues that his conviction for vandalism of property valued at $1,000 or more but less than $10,000 should merge with the conviction for theft of property valued at $1,000 or more but less than $10,000, we treat this issue as waived under Tennessee Court of Criminal Appeals Rule 10(b) because no argument is presented outside of one conclusory statement and no authority is cited.

Waiver notwithstanding, we conclude that the issue is without merit. When analyzing double jeopardy issues, the appropriate two-part test is set out in Blockburger v. United States, 284 U.S. 299 (1932). State v. Watkins, 362 S.W.3d 530, 556 (Tenn. 2012). The Blockburger test requires this court to first determine if the offenses arose from the same act. If the answer is yes, the court must then determine if the offenses "constitute the same offense." Blockburger, 284 U.S. at 304. If "each statutory offense includes an element not contained in the other, the offenses are distinct," and the legislature "is presumed to have intended to allow the offenses to be punished separately." Watkins, 362 S.W.3d at 545-46.

The offenses in question arose from the same act, but the offenses of vandalism and theft are distinct. Vandalism requires damage to be done to the property. See Tenn. Code Ann. § 39-14-408(a). Theft requires a person to obtain or exercise control over the property. See Tenn. Code Ann. § 39-14-103. Each offense contains an element which the other does not. See Watkins, 362 S.W.3d at 545-46. Thus, the offenses do not constitute the same offense under the Blockburger test and are distinct under Watkins. We conclude that the Tennessee legislature intended to allow vandalism and theft to be punished separately, and they do not merge.

*Sentencing*

The Defendant challenges the trial court's imposition of an effective ten-year sentence as excessive and not supported by law. The State responds that the trial court did not abuse its discretion in sentencing the Defendant. We agree with the State.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of

establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-30-210(e) (2014); Bise, 380 S.W.3d at 706. While the trial court should consider enhancement and mitigating factors, such factors are advisory only. See Tenn. Code Ann. § 40-15-114 (Supp. 2015); see also Bise, 380 S.W.3d at 699 n.33, 704; State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). A trial court's "misapplication of an enhancement or mitigation factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706.

In this case, the trial court, after considering the evidence received at the trial and the sentencing hearing, including the presentence report, stated its findings on the record. The court found that the Defendant had "a lengthy history of prior convictions and … a long history of criminal conduct," that the Defendant was on probation when he committed the offenses, and "that measures less restrictive than confinement have frequently or recently been applied unsuccessfully[.]" After considering the extensive damage to the victim's property, and the testimony concerning the "rampant" problems with the theft of copper wire in McMinn county, and the damage to structures caused by such thefts, the trial court found that "confinement is necessary to avoid depreciating the seriousness of the offense[s]" and "to provide an effective deterrence to other likely to commit similar offenses." The trial court also considered the statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee.

The trial court properly considered enhancement and mitigating factors, which factors are advisory only. See Tenn. Code Ann. § 40-35-114 (Supp. 2015); see also Bise, 380 S.W.3d at 699 n.33, 704; State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The Defendant argues that the trial court misapplied the enhancement factor contained in Tennessee Code Annotated section 40-35-114(6), which states "the amount of damage to the property sustained by or taken from the victim was particularly great." We disagree, but even if that were true, misapplication of an enhancement factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act. Bise, 380 S.W.3d at 706. Further, the trial court found that two other enhancement factors applied—that the Defendant had failed to comply with the conditions of a sentence involving release into the community and that, at the time the offense was committed, the Defendant was released on probation. See Tenn. Code Ann. § 40-35-114(8), (13) (Supp. 2015). The application of these enhancement factors was clearly supported by proof submitted at sentencing. Also, the Defendant's individual sentences are within the respective range for each convicted offense. See Tenn. Code Ann. 40-35-112(b) (2014).

- 10 -

The trial court did not abuse its discretion, and the Defendant is not entitled to relief based on the length or manner of service of his sentence.

### III.    Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.


_____
ROBERT L. HOLLOWAY, JR., JUDGE